Colcock, J.
delivered the opinion of the Court.
In this case the motion is refused. The arbitrators appear t® have acted in good faith; and their first efforts to make an award, either by themselves, or by their umpire, having failed, they were at liberty to proceed to the election of another, who would act as umpire, after Douglas had declined to do so.
Formerly much strictness was required in the execution of the authority delegated to these domestic tribunals, but as it was found to impede the determination of cases, and greatly to hinder and delay the administration of justice, this strictness has been relaxed : and if the arbitrators act in good faith, and the decision is fairly and impartially made, it is the inclination of tlie Courts in all cases to support the award. The right of ar- *107 iaitrators to appoint a second umpire, where the first has refused, or declined to act, was once questioned, but it has long since been determined, that they have this power, and, indeed, it is somewhat surprising that it should ever have been questioned.
3 Lev. 263. Ventr. J13. ft
The subject is so well considered in the able treatise of Mr. Ryd on Awards, that I shall refer to no other authority. He observes, that “ from the opinion that the arbitrators, having once elected an umpire, had executed their authority, it has been thought to follow as a necessary consequence, that if they elected one who refused to undertake the business, they could not elect another. In the case of Trippet v. Eyre, which ocurred in the Common Pleas, in the first of William and Mary, this opinion was strenuously maintained by the Chief-Justice Pol-lexfen, in opposition to the rest of the Court, who supported the contrary position. The reasons on which he founded his opinion were these : first, he said the nature of an authority was such, that when once it was executed, it was determined, and the parties to whom it was given had no further power: the arbitrators, therefore, having once named an umpire, could not name another, though the first refused ; because, secondly, the person first named, though he had refused, might still have proceeded if he had pleased ; for no case could be put of a man, vested with a bare authority, being concluded by his refusal, from afterwards executing it; and, therefore, if the second were to be considered as well nominated, there would be a concurrence of authority in several persons to make an award.” 1 Kyd on Awards, 91, -2.
To these arguments it was answered by the other three Judges, that the reference was, to stand to the award of such umpire as the arbitrators should nominate, which could not be confined to the bare naming of a man, but must be taken to he an effectual nomination, by the person named accepting the office ; and his refusal made it amount to no more than a bare proposal to him, which did not exclude the arbitrators from naming another. That it was true, an authority once fully executed, was determined, and could not be executed again, but it was clear, that if a person authorized make a void, or ineffectual execution of his authority, he may execute it again. Thus, if a letter of attorney were to deliver seizin, and the attorney delivered it within view, which was not a good execution of his authority ; he may *108 exeeute it again upon the land. And with respect to the person first named subsequently taking the umpirage upon him, it was urged, that the appointment of the second umpire would, according to the. principles of reason, and common sense, preclude the first from acting.
Mr. Kyd goes on to remark, that notwithstanding the good sense of this reasoning, Chief-Justice Holt did once afterwards decide, “ that having once chosen an umpire, the arbitrators had executed their authority, and could not choose another, although the first refused to act, unless the nomination was under condition that he should acceptwhich latter observation destroys at once the effect of his decision, for that is clearly implied in the appointment, as was observed by Mr. Justice Rokeby in a subsequent case. “ That parties who are actuated by motives of self-interest should raise such a question is not surprising says Mr. Kyd, “ but that grave and learned Judges should be able to persuade themselves, that there is any ground for raising it, must certainly excite astonishment, see Kyd on Awards, 92, -3, -4.
In the case before us, the umpire could not make up an opinion, but voluntarily abandoned the business, and urged M’Calla to join in the choice of another, and he, though reluctantly, did so. As to the calling in of Johnson, it was beside the authority of the arbitrators, and a perfectly nugatory act, which cannot affect the question in any manner.
Motion refused.